UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

THE ONE JAMES PLAZA                  :        Hon. Joseph H. Rodriguez
CONDOMINIUM ASSOCIATION, INC.,

    Plaintiff,                            :        Civil Action No. 15-294

    v.                                          :

RSUI GROUP, INC.,                        :        OPINION

    Defendant.                          :

This insurance coverage matter is before the Court on Defendant RSUI Group, Inc.'s ("RSUI") Motion [Doc. 9] to Dismiss the Verified Complaint filed by Plaintiff The One James Plaza Condominium Association, Inc. ("OJPCA"). The matter was decided on the papers pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, the motion will be granted.

## Background

Plaintiff OJPCA operates condominiums known as One James Plaza in Wildwood, New Jersey and a non-profit rental business servicing those condominiums known as the Trylon Motel. From September 17, 2010 through September 17, 2012, OJPCA was insured by Great American Insurance Group ("Great American").

1

On September 24, 2010, twenty condominium unit owners[1] sued OJPCA & its board of directors in Cape May County Superior Court, Law Division, CPM-L-646-10 ("Lawsuit 1").  They alleged that: 1) OJPCA and the Trylon Motel failed to allow individual unit owners the opportunity to inspect financial records; 2) OJPCA made several capital expenditures without holding meetings or conducting a vote; 3) OJPCA decisions were announced without following OJPCA bylaws; 4) OJPCA violated its own governing laws; 5) OJPCA failed to utilize alternative dispute resolution; and 6) invasion of privacy.  The same day, OJPCA filed an insurance claim with the Great American to recoup losses and the costs of defending Lawsuit 1.  On October 28, 2010, the Complaint in Lawsuit 1 was amended to remove eighteen of the plaintiffs, leaving only Eugene and Kathy Colsher as plaintiffs.  The Cape May County Superior Court transferred Lawsuit 1 from the Law Division to the Chancery Division, as CPM-C-60-10, on December 3, 2010.[2]

---

[1] James Klapmuts, Bruce & Fran Barlow, James & Sherry Gallo, Eugene & Kathy Colsher, Elaine & Paul Midiri, Victor & Donna Molinari, Peter & Eileen Jaskelewicz, Paul & Lucille Stanziale, Anthony & Diana Buono, Richard & Kathy Finn Allen, Mike McFadden.

[2] OJPCA filed another claim with Great American on May 12, 2012 seeking coverage for all losses and costs of defense associated with Lawsuit 1.  This claim was denied because the policy was a claims-made policy and the actual claim related back to the policy in effect September 17, 2010-11.

The Colshers & OJPCA signed and filed a Stipulation of Settlement dismissing Lawsuit 1 with prejudice on January 23, 2013. The Stipulation stated, in part, "As set forth in Paragraph 6 of the Order dated August 11, 2011, each party shall continue the right to assert claims which have arisen since the filing of the most recent amended complaint in subsequent litigation [so any claim that arose after 10/28/2010]." Great American closed the claim in March of 2012, having spent approximately $57,000 in defense fees.

From September 17, 2012 to September 17, 2013, Defendant RSUI insured OJPCA via a claims made Directors and Officers Liability Policy, NHP648145. The Policy included a Specific Litigation exclusion, which stated "The Insurer shall not be liable to make any payment for Loss arising out of or in connection with any Claim made against any Insured alleging, arising out of, based upon or attributable to, directly or indirectly, in whole or in part, the following litigation: Gene and Kathy Colsher."[3]

On April 4, 2013, eight unit owners[4] including Eugene and Kathy Colsher, "individually and derivatively on behalf of" OJPCA, sued seven

---

[3] The Colshers were the only remaining plaintiffs in the Lawsuit 1 when it settled on January 18, 2013.

[4] Pete & Eileen Jaskelewicz, Elaine & Paul Midiri, Paul & Lucille Stanziale, and Eugene & Kathy Colsher.

3

OJPCA board members and managers of the Trylon Motel, again in Cape May County, CPM-C-21-13 ("Lawsuit 2").[5, 6] They alleged that the defendants were maintaining a for-profit rental business within OJPCA which was detrimental to the non-profit status of OJPCA, and that rental funds and managerial responsibilities of the Trylon Motel were commingled with those of OJPCA. Lawsuit 2 seeks: 1) judgment declaring OJPCA usage fees invalid and declaring that the plaintiffs were in good standing regarding all outstanding fees and dues owed; 2) a permanent injunction barring the defendants and OJPCA from participating in their

---

[5] The same day, OJPCA filed a claim with Great American seeking coverage for all losses and defense costs associated with Lawsuit 2. Great American denied coverage September 13, 2013, finding that the "Claim" contained in the suit was first made against its Insureds when the Complaint was served on May 3, 2013, outside of the Great American policy period.

[6] The Complaint in Lawsuit 2 was amended May 14, 2013 to name OJPCA as a Defendant and again August 14, 2013 to add the Trylon Motel as a Defendant. On October 15, 2013, the Complaint in Lawsuit 2 was amended a third time to include additional allegations and documents regarding the rental business operated by the Trylon Motel at The One James Plaza. On December 5, 2013, the Presiding Judge, Chancery Division, after receiving submissions from the parties and hearing oral argument, entered an Order in Lawsuit 2: 1) vacating a 11/15/2014 Order "entered in error"; 2) granting in part and denying in part the plaintiffs' motion to amend their pleadings; 3) denying the plaintiff's application for appointment of receiver; 4) denying the plaintiff's application to invalidate 2012 "assessment" or usage fee; 5) granting in part and denying in part the defendants' motion to dismiss plaintiffs' pleading; 6) dismissing Jay and Louise Meehan as defendants; 7) deeming the plaintiffs in good standing provided they deposited into their attorney's trust account "the sums of the disputed assessments."

for-profit unlicensed rental activities; 3) appointment of a receiver to wind down the rental business; and 4) award of costs and fees for plaintiffs but denial of such for defendants.

In August 2013, OJPCA submitted a claim seeking coverage by the RSUI policy for all losses and costs of defense associated with Lawsuit 2. RSUI denied coverage August 21, 2013 and again September 11, 2013, citing the Specific Litigation Exclusionary Provision, and finding that the Insured knew or should have known that the RSUI Policy excluded any litigation related to the Colsher's original action, Lawsuit 1.[7] In essence, RSUI determined that Lawsuit 2 arose out of, was based upon, and attributable to Lawsuit 1, and therefore is excluded under the Specific Litigation exclusion of the RSUI Policy. In a letter dated August 21, 2013, RSUI explained:

> Prior to the filing of [Lawsuit 2], the Association settled a prior suit [Lawsuit 1] with Association members Gene and Kathy Colsher, who are named Plaintiffs in [Lawsuit 2]. The Colshers filed [Lawsuit 1] in September 2010, alleging that the Association intended to present financial records to all Association members, but never offered the records for review. The complaint in [Lawsuit 1] details the Colshers' attempts to review the documents, in addition to the efforts of Pete and Eileen Jaskelewicz, Paul and Elaine Midiri, and Paul and Lucille Stanziale (all named Plaintiffs in [Lawsuit 2]) to review the documents.

---

[7] RSUI also referenced Lawsuit 1 as a pending claim on OJPCA's supplemental claims application, the inclusion of which resulting in the claim having been made under the expiring policy and therefore not subject to coverage by RSUI.

The [Lawsuit 1] complaint states that the Colshers attended a meeting in October 2005, which the Association board called to present financial documents to finalize the separation of the Association's business from the Trylon rental business. Both businesses were operating on the same property and the Colshers alleged that the Association directors created a conflict of interest by operating both the Trylon rental business and the Association. According to the [Lawsuit 1] complaint, the Colshers renewed their requests verbally and via email several times in the years following. To this day, the businesses have not been separated.

In [Lawsuit 1], the plaintiffs were concerned about whether the board was comingling the assets of the two businesses. The plaintiffs were concerned that their Association fees were subsidizing the rental business, which was an even greater concern when the Association imposed a higher assessment on owners to make up for a $42,000 shortfall. The plaintiffs were suspicious of the increased assessment because the Association failed to adequately describe how the shortfall developed. The inability to access records made the Colshers question whether expenses that should be charged to the Trylon rental business were actually being charged to the Association. The Colshers also complained that the Association was allowing Trylon guests to use Association common areas at the expense of the Association members, further putting at issue the directors' conflicting interests. The conflicts of interests are still prevalent, as [Lawsuit 2] alleges that the "individuals in control have favored putting the guests into their units at the expense of other owners participating in the rental program."

\*       \*       \*

The same core allegations run through both [Lawsuit 2] and [Lawsuit 1]. The first core allegation is the Plaintiffs' concerns that the Association's directors were co-mingling the assets of the Association and the Trylon rental business. [Lawsuit 1] expresses these concerns and contains a detailed account of the Colshers' attempt to obtain relevant records to show separate accounting between the Association and the Trylon rental

business.  The second core allegation is the use of common areas by renters, to the detriment of owners, and the use of Association fees to support the rental business and improvements to the common areas.  Finally, the third core allegation detailed the Association's directors' discrimination against those owners who do not participate in the rental program, specifically by noting that rental units received improvements, presumably with common Association funds, where non-rented units did not receive the improvements.  Specifically, both lawsuits allege that the Association's directors were unable to put the best interests of the owners ahead of the directors' personal profits.

OJPCA filed this declaratory judgment action against RSUI in Cape May County, CPM-L-623-14, seeking coverage for Lawsuit 2.  The case was subsequently removed to this Court based upon diversity jurisdiction.  Count I seeks a declaration: 1) that the Specific Litigation exclusionary provision in the RSUI policy is inapplicable (as is the Prior and Pending Litigation exclusion) because it is overbroad, and 2) compelling specific performance to require RSUI to extend coverage to OJPCA for all claims made regarding all litigation having commenced after April 4, 2013, when Lawsuit 2 was filed.  Count II alleges unjust enrichment in that RSUI wrongly retained premiums paid by OJPCA but denied coverage and Count III asserts bad faith arising from RSUI's alleged breach of the implied covenant of good faith and fair dealing in denying coverage.

7

## Jurisdiction

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, the diversity jurisdiction statute, which provides that: "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between [c]itizens of different States[.]" 28 U.S.C. § 1331(a)(1). Plaintiff The One James Plaza Condominium Association is a New Jersey non-profit corporation with its principal place of business located in Wildwood, New Jersey.  Defendant RSUI Group, Inc. is a Delaware corporation with its principal place of business located in Atlanta, Georgia. As such, complete diversity exists between the parties. Moreover, the amount in controversy in this dispute is alleged to exceed $75,000.

## Legal Standard

When considering a motion to dismiss a complaint under Rule 12(b)(6) for failure to state a claim, "[f]irst, the court must take note of the elements a plaintiff must plead to state a claim." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (citation and internal quotation marks omitted).  Then the court must determine if a claim has facial plausibility, a threshold that can be reached only when a plaintiff pleads factual content—as opposed to mere conclusions—allowing the court to "draw the

reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although the court "must accept the allegations in the [c]omplaint as true, [it is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." Morrow v. Balaski, 719 F.3d 160, 165 (3d Cir. 2013) (quoting Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007)) (internal quotation marks omitted).

"Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation marks and citations omitted) (emphasis deleted). That is, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) (internal citations omitted). In addition, a court may take judicial notice of public records. M & M Stone Co. v. Pa. Dept. of Envt'l Prot., 388 F. App'x 156, 162 (3d Cir. 2010). As such, the Court need not convert Defendant's motion to dismiss into a summary judgment motion here.

## Discussion

Through the instant motion, Defendant moves to dismiss the entirety of Plaintiff's Complaint. In Count I, Plaintiff OJPCA requests the Court to declare that Defendant RSUI was required to provide it with insurance coverage for Lawsuit 2 in New Jersey state court. As stated above, Count II alleges unjust enrichment that RSUI retained premiums paid by OJPCA yet denied coverage and Count III asserts bad faith arising from RSUI's alleged breach of the implied covenant of good faith and fair dealing when it declined to provide coverage for the civil suit. RSUI bases its motion on the premise that, under the express terms of the Policy, it was not required to provide coverage for Lawsuit 2 because Lawsuit 2 essentially is a continuation of Lawsuit 1, thereby precluded by the Specific Litigation exclusion contained in the Policy. OJPCA opposes the motion, and argues that the claims asserted against it in Lawsuit 2 are new claims, separate and apart from those previously litigated. According to OJPCA, Lawsuit 1 was directed at its Association for the type of common disputes that arise between condominium associations and unit owners regarding daily operations, whereas Lawsuit 2 targets the Trylon Motel's "illegal rental activities" sanctioned by OJPCA.

Under New Jersey law, "[i]nsurance coverage is a matter of contract law determined by the language of insurance agreements." Ayala v. Assured Lending Corp., 804 F. Supp. 2d 273, 281 (D.N.J. 2011) (citing Longobardi v. Chubb Ins. Co. of N.J., 582 A.2d 1257, 1260 (N.J. 1990)). When the policy's language is clear and unambiguous, the court is bound to enforce it according to its plain and ordinary meaning. Stafford v. Scottsdale Ins. Co., 416 F. App'x 191, 194 (3d Cir. 2010) (citing Voorhees v. Preferred Mut. Ins. Co., 607 A.2d 1255, 1260 (N.J. 1992)). If there is any ambiguity with regard to wording in the policy, however, the language should be "construed liberally in the insured's favor." Ayala, 804 F. Supp. 2d at 281 (citing Longobardi, 582 A.2d at 1260); see also Zurich Am. Ins. Co. v. Keating Bldg. Corp., 513 F. Supp. 2d 55, 64 (D.N.J. 2007). "A provision of an insurance policy is ambiguous if reasonably intelligent [persons] on considering it in the context of the entire policy would honestly differ as to its meaning." Vlastos v. Sumitoma Marine Fire Ins. Co., 707 F.2d 775, 778 (3d Cir. 1983). Moreover, when analyzing an insurance policy, the court must view it from the perspective of an average policyholder. Zurich, 513 F. Supp. 2d at 69; Morrison v. Am. Int'l Ins. Co. of Am., 887 A.2d 166, 169 (N.J. Super. Ct. App. Div. 2005).

Here, the insurance policy agreement between RSUI and OJPCA, Policy Number NHP648145, begins by stating:

> THIS IS A CLAIMS MADE AND REPORTED POLICY THAT APPLIES ONLY TO THOSE **CLAIMS** FIRST MADE AGAINST THE **INSURED** DURING THE **POLICY PERIOD** THAT ARE REPORTED TO THE **INSURER** DURING THE **POLICY PERIOD** OR WITHIN SIXTY (60) DAYS THEREAFTER . . . . **PLEASE READ YOUR POLICY CAREFULLY.**

In New Jersey, "the event that invokes coverage under a 'claims-made' policy is the transmittal of notice of the claim to the insurance carrier.'" Zuckerman v. Nat'l Union Fire Ins. Co., 495 A.2d 395, 406 (N.J. 1985). The Declarations Page of the Policy here indicates that the Policy Period spanned from September 17, 2012 through September 17, 2013. Loss is defined by the Policy to include both damages and Defense Expenses, but the Policy also clarifies that RSUI has a duty "to defend any Claim against the Insured *for which coverage applies.*" (Emphasis added.) Further, the Policy provides "[t]he Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured":

> Alleging, arising out of, based upon or attributable to, directly or indirectly, the same or essentially the same facts underlying or alleged in any matter which, prior to the inception date of this policy, has been the subject of notice to any insurer of a Claim, or a potential or threatened Claim or an occurrence or circumstance that might give rise to a Claim under any policy of which this insurance is a renewal or replacement or which it may succeed in time.  [Claims Reported to a Prior Carrier Exclusion.]

> Alleging, arising out of, based upon or attributable to, in whole or in part, any litigation involving any Insured that was commenced or initiated prior to, or was pending at the inception date of this policy, or arising out of or based upon, in whole or in part, any facts or circumstances underlying or alleged in any such prior or pending litigation.

Further,

> The Insurer shall not be liable to make any payment for Loss arising out of or in connection with any Claim made against any Insured alleging, arising out of, based upon or attributable to, directly or indirectly, in whole or in part, the following litigation: Gene and Kathy Colsher.  [Specific Loss Exclusion.]

RSUI argues that coverage for Lawsuit 2 was barred by these exclusion provisions.

Exclusion provisions in insurance policies should be strictly construed against the insurer.  Flomerfelt v. Cardiello, 997 A.2d 991, 996-97 (N.J. 2010).  Coverage should only be excluded if the insurer can show a substantial overlap between the facts and claims alleged in prior and subsequent actions.  See Federal Ins. Co. v. Raytheon Co., 426 F.3d 491, 499 (1st Cir. 2005) (For claims "based upon, arising from, or in consequence of any demand, suit or other proceeding pending" prior to the effective date, "or the same or any substantially similar fact, circumstance or situation underlying or alleged therein" it was not required that the first action provide the sole support for the second," but rather that "the

13

allegations in the second complaint find substantial support in the first complaint," meaning that "the allegations of the second complaint substantially overlap with those of the first.")

RSUI has argued that the parties are common to both matters, as are certain core allegations. For instance, the plaintiffs in both actions allege that OJPCA failed to disclose financial information to its members upon request. Plaintiffs in both actions allege that OJPCA maintains the Trylon Motel rental business to the detriment of owners who did not rent out their units. The plaintiffs in both cases allege unsuccessful attempts at separating the business of OJPCA from the rental business of the Trylon Motel. Both actions complain of the commingling of assets and improper use of the property, further asserting the illegality of the rental business to the detriment of non-renting owners.

A review of the complaints filed in both actions indicates that Lawsuit 2 arose from and was based upon the same set of factual allegations and claims made in Lawsuit 1. Both suits involved the same parties and similar claims. The overlap of factual allegations between the two lawsuits is substantial enough to find that Lawsuit 1 served as a "foundation and logical basis" for the Lawsuit 2. The pleadings in both underlying actions need not have been identical to preclude coverage.

Given the substantial overlap of factual allegations and causes of action in the two underlying suits, the Court finds that, based on the express language of the Specific Loss exclusion provision, Lawsuit 2 arose out of or in connection with claims made against OJPCA "alleging or arising out of, based upon or attributable to, directly or indirectly, in whole or in part," Lawsuit 1 that took place prior to the start of the Policy Period.[8] As such, RSUI was not required to provide OJPCA with coverage for Lawsuit 2. Further, the Claims in the two lawsuits are sufficiently interrelated to trigger exclusion from coverage pursuant to other exclusions contained in the Policy. Accordingly, Defendant's request to dismiss Count I of Plaintiff's Complaint will be granted.

Next, as to Count II, "[t]o establish a claim for unjust enrichment, 'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.' That quasi-contract doctrine also 'requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a

---

[8] The phrase "arising out of" "which appears frequently in insurance policies, has been interpreted expansively by New Jersey courts in insurance coverage litigation." American Motorists Ins. Co. v. L-C-A Sales Co., 713 A.2d 1007, 1010 (N.J. 1998). "Arising out of" means "conduct 'originating from,' 'growing out of' or having a 'substantial nexus' with the activity for which coverage is provided." Id. (citations omitted).

15

benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.'" Iliadis v. Wal-Mart Stores, Inc., 922 A.2d 710, 723 (N.J. 2007) (quoting VRG Corp. v. GKN Realty Corp., 641 A.2d 519 (N.J. 1994)).

Accordingly, to state a claim for unjust enrichment under New Jersey law, OJPCA must plead that RSUI was enriched in an unjust manner not governed by any enforceable contract.  The parties' rights and obligations in this case, however, are governed by their valid insurance contract.  OJPCA does not allege that it conferred any benefit on RSUI other than by paying its policy premiums.  As such, OJPCA has not adequately pled a benefit that is unjust; rather, as pled, OJPCA received the benefit of its bargain, despite that its insurance claim was denied.  The Court is mindful that federal law permits alternative pleading of claims; however, Plaintiff's unjust enrichment claim fails as a matter of law and must be dismissed.

Regarding Count III, to state a claim for bad faith denial of insurance coverage, Plaintiff must show: (1) the insurer lacked a reasonable basis for its denying benefits, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim. Pickett v. Lloyd's, 621 A.2d 445 (N.J. 1993).  Such bad faith claims are to be analyzed in light of a "fairly debatable" standard, which posits that "[i]f a claim is 'fairly debatable,' no

liability in tort will arise." Pickett, 621 A.2d at 453.  The "fairly debatable" standard will be met if the claimant could have established as a matter of law a right to summary judgment on the substantive claim.  Id.  As a matter of law, a claim of bad faith must fail if there is an issue of material fact as to the underlying claim regarding Plaintiff's entitlement to insurance benefits.  See Tarsio v. Provident Ins. Co., 108 F. Supp. 2d 397, 401 (D.N.J. 2000).  Thus, when the insured's complaint presents issues of material fact as to the underlying claim, dismissal of a related bad faith claim is proper.  Fuscarello v. Combined Ins. Group, Ltd., 2011 WL 4549152, at *5 (D.N.J. Sept. 29, 2011) (dismissing plaintiff's bad faith claim on a motion to dismiss where insurer's reason for refusing to pay, as alleged in the complaint, presented disputed issues of material fact as to the underlying substantive claim); Dare Inv., LLC v. Chicago Title Ins. Co., 2011 WL 2600594, at * 12 (D.N.J. June 29, 2011) (dismissing plaintiffs bad faith claim because plaintiff could not prevail on summary judgment for the underlying insurance claim due to the ambiguity of the title policy at issue and the plaintiff's reasonable expectations thereunder).

      Here, RSUI's denial of coverage, as evidenced in the denial letter dated August 21, 2012 and quoted above, provided an extensive explanation as to why OJPCA's claim did not fall within the coverage of the RSUI Policy.

Such explanation provides plausible reasons for the denial of coverage and demonstrates that there are, at the very least, genuine questions regarding whether Plaintiff's claims fell within the coverage provided. Accordingly, OJPCA's claim under the Policy was fairly debatable and cannot form the basis of a bad faith claim. RSUI's motion to dismiss Count III will be granted.

    An appropriate Order will issue this date.

Dated: December 1, 2015                         /s/ Joseph H. Rodriguez
                                                       JOSEPH H. RODRIGUEZ
                                                               U.S.D.J.